**UNITED STATES of America,
Appellant,**

v.

**Leroy SORRELL.**

**No. 76–1647.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 18, 1976.
Reargued En Banc May 12, 1977.
Decided Aug. 22, 1977.

---

**16.** Evidence of pain and suffering is particularly ill-suited to review upon only a written record.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Edward S. G. Dennis, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellant.

David A. Garfunkel, Philadelphia, Pa., Douglas Riblet, Defender Ass'n of Philadelphia, for appellee.

Argued Nov. 18, 1976 before VAN DUSEN and ALDISERT, Circuit Judges, and BROTMAN, District Judge.

Reargued en banc May 12, 1977 before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

**OPINION OF THE COURT**

VAN DUSEN, Circuit Judge.

This is an appeal by the United States from an order of the district court which dismissed an indictment against the defendant because of the Government's failure to comply with the Interstate Agreement on Detainers, 18 U.S.C.App. p. 230 (1977 Supp.) (the Detainer Agreement). We affirm for the reasons stated below.

I.

On March 23, 1976, an Eastern District of Pennsylvania grand jury returned an indictment against Leroy Sorrell for unlawful possession of a firearm.[1] Sorrell was, at the time of his indictment, in the custody of the Commonwealth of Pennsylvania at the State Correctional Institution at Graterford, Pennsylvania, serving a state prison sentence of one to ten years. On March 23, 1976, the district court issued a writ of habeas corpus ad prosequendum,[2] directing the United States Marshal and the Warden of Graterford Prison to produce the defendant at the United States Court House, Philadelphia, on April 2, 1976, for arraignment. On April 2, 1976, the defendant was arraigned at the above United States Court

[1.] Sorrell was indicted for violations of 26 U.S.C. § 5861(d), (i), for possession of an unregistered 12-gauge shotgun, having no serial number and a barrel length of 12 inches. The offenses alleged occurred on or about December 29, 1974. Sorrell was indicted for these offenses by the state, but the indictment was subsequently dismissed for failure to comply with Pa.R.Crim.P. 1100 (180-day trial rule). Although not entirely clear from the record, it appears that the federal indictment was returned subsequent to the dismissal of the state prosecution because of the state speedy trial problem.

[2.] Sorrell's appearances before the United States District Court on April 2, April 19 and April 26, 1976, were compelled pursuant to 28 U.S.C. § 2241(a) and (c)(5), which provide in pertinent part:

"§ 2241. Power to grant writ
(a) Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions. . . .

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

"(5) It is necessary to bring him into court to testify or for trial."

The service of an order under the above section of Title 28 is fully executed when the custody of the prisoner is changed from the state to the United States. The provision for a writ of habeas corpus ad prosequendum has existed in the Acts of Congress ever since the Judiciary Act of 1791, so that Congress, when it adopted the Detainer Agreement, was well aware of this provision as a means for producing a prisoner from the state jurisdiction to the federal courts to respond to federal criminal charges.

The wording in each of the writs was substantially the same with the only differences appearing in the dates, the description of the proceeding (arraignment or trial), and the judicial officer before whom the defendant was ordered to appear. The form writ for the April 2 appearance is reproduced in note 6 below.

House and then returned to Graterford[3] by the United States Marshal. A second time, on April 19, 1976, Sorrell was brought before the district court for trial pursuant to a writ of habeas corpus ad prosequendum and was returned to Graterford by the United States Marshal after the trial had been continued on the request of defense counsel. Finally, the defendant was removed from state to federal custody for a third time on April 26, 1976, pursuant to such a writ when the case was again scheduled for trial. On this last date, Sorrell filed a motion to dismiss the indictment pursuant to Article IV(e) of the Interstate Agreement on Detainers, 18 U.S.C.App. p. 232 (1977 Supp.); 19 P.S. § 1431 *et seq.*[4] After oral argument on the motion, the district court filed an opinion[5] and order granting the defendant's motion and dismissing the criminal indictment. The United States appealed from that final judg-

ment. By a November 4, 1976, judgment order, this court affirmed.

After the filing of a petition for rehearing en banc on January 11, 1977, the judgment order was vacated by an order filed January 27, 1977, and rehearing en banc was scheduled.

## II.

■ The basic statutory framework of the Detainer Agreement has been summarized in *United States ex rel. Esola v. Groomes,* 520 F.2d 830, 833–34 (3d Cir. 1975), and need not be described here. *See also United States v. Ford,* 550 F.2d 732, 737–41 (2d Cir. 1977). However, the legislative purpose in adopting this statute is specifically set forth in Article I, which is designed "[t]o implement the right to a speedy trial and to minimize the interference with a prisoner's treatment and rehabilitation," *Esola, supra* at 833, as follows:

---

**3.** Because no federal detention facility exists in the Eastern District of Pennsylvania, federal prisoners awaiting trial at the Philadelphia U.S. Court House are housed in these state facilities in the nearby area, pursuant to a contract between federal and state authorities (see 18 U.S.C. § 4002; *e. g.,* appendix at A–31—A–35 in *United States v. Thompson,* 562 F.2d 232 (3d Cir., No. 76–1976), also decided this day):

Philadelphia Detention Center (Philadelphia)
Berks County Prison at Reading (80 miles from the Philadelphia U.S. Court House)
Delaware County Prison (25 miles from the Philadelphia U.S. Court House)
Chester County Prison (35 miles from the Philadelphia U.S. Court House)
Holmesburg Prison (Philadelphia)
House of Correction (Philadelphia)

The Graterford Prison is 35 miles from the Philadelphia U.S. Court House and there is not regularly available transportation to and from the Philadelphia U.S. Court House to that institution, whereas there is such transportation from the above-listed prisons where federal prisoners are normally kept.

Thus, if Sorrell had been under federal custody in the Philadelphia Detention Center or any of the other prisons listed above, he would have been more available to his counsel because he could have been brought in by a Marshal's car bringing other federal prisoners to the Philadelphia U.S. Court House. By being kept in state custody at Graterford, his counsel had to consult with him at a location where public transportation is not as readily available as it is to the other prisons listed

above. This last point was raised by counsel at oral argument before the three-judge panel as well as the en banc court, with the suggestion that the difficulty engendered in gaining access to the defendant because of the above-described complications significantly impaired the ability of counsel to consult with the defendant in preparation for trial and the development of the defense.

At the en banc argument, in response to a question from the panel, it was stated that since the time of the decision of the three-judge panel in this case, affirming the dismissal of the district court, the United States Attorney's Office for the Eastern District of Pennsylvania has been adhering to the mandates of the Detainer Agreement by retaining federal custody over prisoners until they can be tried. No suggestion has been made to this court that these procedures have impaired the efficient administration of the United States Attorney's responsibilities in any way.

**4.** Article IV(e) of the Detainer Agreement, 18 U.S.C.App. p. 232 (1977 Supp.), provides:

"If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

**5.** *United States v. Sorrell,* 413 F.Supp. 138 (E.D.Pa.1976).

"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party States also find that proceedings with reference to such charges and detainers, while emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

18 U.S.C.App. p. 230 (1977 Supp.).

### III.

■ An issue in this case is whether a writ of habeas corpus ad prosequendum under 28 U.S.C. § 2241(c)(5) is a "detainer" within the meaning of that term as used in the Detainer Agreement. The legislative history of P.L. 91–538 (Act of December 9, 1970, 84 Stat. 1397), adopting the Detainer Agreement, makes clear that Congress intended the word "detainer" to mean any notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction. Each Form Order constituting the writ of habeas corpus ad prosequendum was clearly a notification that the defendant was wanted to face a criminal charge in the United States District Court for the Eastern District of Pennsylvania.[6]

In *Esola, supra,* this court said at pages 836 and 838:

"First, the appellee contends that the five transfers in this case were pursuant to writs of habeas corpus ad prosequendum issued by a state court and honored as a matter of comity, by the Federal Bureau of Prisons. Since the request was not made pursuant to Article IV of the Agreement, it is argued that the remedial provisions could not be relevant. . .

. . . . .

"The word 'detainer,' as it is used in the Agreement, is 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' See Senate Report 91–1356, 91st Cong., 2d Sess., 2 U.S. Code Cong. & Admin. News, 1970, p. 4865. This definition of a detainer from the Senate Report finds support in the other legislative history of the Agreement and is consistent with the purposes of the Agreement.

Insofar as *United States v. Scallion,* 548 F.2d 1168, 1173 (5th Cir. 1977), holds that " 'detainer' for purposes of the Act does not include a writ of habeas corpus ad prosequendum issued by a federal district court", we decline to follow it on the facts of this case.

The lodging on March 26, 1976, of a written document denominated a "Detainer" with the Warden at Graterford (A6–A7), after the issuance of the above writ of habeas corpus ad prosequendum had been signed on March 23 and filed on March 24, did not alter the effect of the March 23 writ as both a detainer and "a written request for temporary custody or availability" under Article IV(a) of the Detainer Agreement. 18 U.S.C.App. p. 232 (1977 Supp.).

**6.** The first such order, which was filed March 24, 1976 (Doc. 3 in *United States v. Sorrell,* Crim. No. 76–165, E.D.Pa.), contained this language:

"AND NOW, this 23rd day of March, 1976, it is hereby

ORDERED, ADJUDGED AND DECREED that the Warden of Graterford Prison and the United States Marshal(s) for the Eastern District of Pa. produce before this Court the body of Leroy Sorrell on Friday, April, 2, 1976 at 10:00 A.M. before the Honorable Peter B. Scuderi in Courtroom No. 3, 4th Floor to appear for Arraignment in the above-captioned matter, and that immediately upon the termination of the said proceedings, the said defendant be delivered into the custody of the said superintendent of the said institution."

"Although the legislative history of the federal enactment of the Agreement is not voluminous, perhaps because there was apparently no opposition to it in either the House of Representatives or Senate, the remarks of Representative Kastenmeier upon introduction of the bill make clear that he considered a detainer to be simply a notice filed with the confining institution that criminal charges from another jurisdiction were outstanding and that the prisoner was wanted in order to stand trial on those charges. 116 Cong.Rec. 13999 (remarks of Rep. Kastenmeier).[24] The Committee Reports of both

[24] Rep. Kastenmeier stated: 'For the purpose of this legislation . . . a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to stand trial on pending criminal charges in another jurisdiction.' 116 Cong. Rec. 13999 (May 4, 1970)."

the House Judiciary Committee and the Senate Judiciary Committee follow Rep. Kastenmeier's language almost verbatim.

Our holding that the first two writs of habeas corpus ad prosequendum (see page 229) were "detainers" under the Detainer Agreement is supported by *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976); see also *United States v. Ford, supra* at 736–37; but *cf. Ridgeway v. United States*, 558 F.2d 357 (6th Cir., 1977); *United States v. Chico*, Opinion of June 20, 1977, 558 F.2d 1047 (2d Cir. No. 939, Sept. Term 1976, Docket No. 77–1016.[6a] *Scallion, supra*, may be distinguished factually, while *Mauro* is substantially identical to this case and the result there parallels the result we reach here.

The dissenting opinion of Judges Adams, Rosenn and Weis complains that the effect of the legislative history of the Detainer Agreement, as adopted by Congress in 1970

(see pages 230–231), is "to cut back on" or restrict the "availability of" the writ specified in 28 U.S.C. § 2241(a) and (c)(5), which has been authorized since the 18th Century. But the Detainer Agreement only provides certain consequences which follow the use of such writ and it remains fully available to the courts. Congress is free to amend P.L. 91–538 by including a definition of "detainer" which would exclude the writ provided for in 28 U.S.C. § 2241(a) and (c)(5) just as it added to the previous language of the Detainer Agreement the definitions in 18 U.S.C.App. §§ 3 and 4 when P.L. 91–538 was adopted in 1970.

■ We cannot agree with Judge Garth's statement, 562 F.2d at page 239 of his separate opinion that "there are probably hundreds of federal prisoners, parolees, and probationers *who will be eligible to have their federal convictions vacated* under the majority's interpretation of the Agreement . . . ." (Emphasis supplied.) Since this issue involves statutory interpretation of Congressional wording designed to require speedy criminal trials, there seems little justification for retroactive application of the statutory construction ultimately adopted, through collateral attack, where the defendant-prisoner has not requested a speedy trial prior to the trial. See for example *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); *U. S. ex rel. Cannon v. Johnson*, 536 F.2d 1013, 1015–16 (3d Cir. 1976).[6b]

■ The reference in note 2 of Judge Weis' separate opinion to a 1975 report of the Senate Judiciary Committee concerning completely separate proposed legislation introduced into Congress in that year but

---

**6a.** The approach of *Chico, supra* at page 1049, would frustrate the purpose of securing a speedy trial through requiring litigation and adjudication in each case of the issue of whether the actions of the receiving state conform not only to the language of the Detainer Agreement but also to its policies and purposes. We recognize that Congress should harmonize the time periods provided for in the Speedy Trial Act and the time requirements of the Detainer

Agreement. *Compare* 18 U.S.C. § 3161 *with* 18 U.S.C.App. Article IV(c).

**6b.** Also under the principles governing retroactive applications applied in civil cases as set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1972), relied on in note 1 of Judge Garth's opinion, it would appear that this issue can well be considered as "an issue of first impression whose resolution was not clearly foreshadowed".

never enacted is "a hazardous basis for inferring the intent of an earlier [Congress]", *Benevento v. United States*, 461 F.2d 1316, 1322, 198 Ct.Cl. 772 (1972). Similarly, the citation in note 5 of that separate opinion to a definition of "detainers" in a Handbook of the Council of State Governments written in 1949 seems to be of little relevance in interpreting a 1970 Act of Congress.[6c] See pages 230–231, setting forth the legislative history of the 1970 Detainer Agreement with which we are concerned.

Also, the separate opinion of Judge Garth speculates, from the absence of legislative history, that Congress did not mean what the words of Article IV(e) of the Detainer Agreement (above at note 4) provide, which policy is contrary to the position of Professor Leflar quoted in Aldisert, "The Judicial Process," at 177, 180 (1976). As pointed out above in the last paragraph of note 3, compliance with the terms of Article IV(e) of the Detainer Agreement has been worked out in the Eastern District of Pennsylvania by transfer of custody from state to federal authorities without doing violence to the language of Congress.

### IV.

As noted under part II above, by adopting the Detainer Agreement in 1970, Congress intended its provisions to apply whenever a detainer had been lodged with a state jurisdiction by the Federal Government.[7] Also, we note that by returning Sorrell to Graterford Prison, his ability to consult with counsel was impeded, which had the potential concomitant effect of impairing his constitutional right to a speedy trial. Interference with the right to a speedy trial is inconsistent with the remedial purposes and plain statutory language of the Detainer Agreement.[8]

An order will be entered affirming the judgment of the district court.

---

**6c.** See Sutherland, Statutory Construction (4th ed.), § 48.11 at page 213, where the author states:

> "Statements from other nonofficial sources having no special connection with the preparation and proposal of a bill are not generally considered for interpretation purposes."

**7.** It is clear that the Detainer Agreement applies to the United States as a "Receiving State." In *Scallion, supra*, the court said at page 1174 of 548 F.2d:

> "The Government also argues that when Congress enacted the Act it intended to cast the United States in the role of a 'Sending State' and not a 'Receiving State' under the Agreement in recognition of the existing power to obtain custody of state prisoners by the use of the writ of habeas corpus ad prosequendum. We are unable to detect such intent. Article II provides that 'State' as used in the Agreement includes the United States of America. To the extent that the United States makes use of a detainer, it is a 'Receiving State' subject to the terms of the Agreement".

*Accord, United States v. Mauro, supra* at 593–95.

**8.** See, *e. g.*, II at pages 229–230; *Esola, supra* at 833 & note 7; *accord, Mauro* at 590–91.