UNITED STATES of America ex rel. Lamont Melvin FRISBEE

v.

Thomas C. RAPONE, Superintendent Delaware County Prison.

Civ. A. No. 77–3249.

United States District Court,
E. D. Pennsylvania.

April 26, 1978.

### MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

Relator is serving a sentence at the Delaware County Prison following a conviction in the Delaware County Court of Common Pleas. His habeas petition claims that the Essex, New Jersey, prosecutor has twice lodged detainers to secure his presence to stand trial in that state. According to relator, both detainers were dismissed by Pennsylvania courts, apparently because of procedural defects. After the third detainer was lodged, relator "signed extradition papers" upon the collective advice of a Pennsylvania Assistant District Attorney, a Pennsylvania public defender and a Pennsylvania prison official that New Jersey could obtain custody of relator upon his probation date whether or not he signed the papers. He subsequently learned "through inmates at the prison law clinic" that the advice amounted to "deception." Relator

instituted this habeas action, seeking an injunction to prevent New Jersey from taking custody of him through the "deception."

Magistrate Naythons recommended dismissal of the suit on the grounds that petitioner had not exhausted state remedies. In the Magistrate's view, proper exhaustion would require petitioner to seek injunctive relief in the Pennsylvania state courts, and presumably have such relief denied, prior to coming into federal court. While we agree with Magistrate Naythons' conclusion that this action must be dismissed, we are constrained to disagree with his reasoning as to why.

■ To begin with, it is abundantly clear that this is simply not a typical habeas corpus action, and that the "exhaustion of state remedies" requirement of 28 U.S.C. § 2254(b) has little or no application. The essence of a federal habeas suit on behalf of a state prisoner is that the petitioner's custodian is instructed to "produce the body" of petitioner for an independent federal judicial scrutiny of the legality of petitioner's continued confinement. *See* Sokol, *Federal Habeas Corpus* § 2 (2d Ed.1969). 28 U.S.C. § 2254(a) permits a habeas action by a state prisoner *"only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Hence, the habeas action is a vehi-

cle for challenging a prisoner's existing custody.[1] Here, petitioner has correctly sued his custodian (Thomas Rapone, Superintendent of the Delaware County Prison in which he is confined). But he is not challenging anything related to the reasons for which he is incarcerated in that prison. Nor is he even challenging something happening outside his place of confinement because it *impinges upon* his confinement (such as an illegally lodged detainer from a state prosecutor in New Jersey which is creating an adverse impact on his conditions of confinement, for example by impeding a rehabilitation program). Rather, petitioner is simply attempting to enjoin New Jersey from extraditing him pursuant to his agreement. Whereas virtually all requested habeas relief would have the effect of terminating present conditions of confinement, *see Preiser,* n. 1 *supra* at 489, 93 S.Ct. 1827, petitioner's requested relief would have the effect of forcing the Delaware County Prison to keep him incarcerated, and not surrender him up to New Jersey.

■ Stripped down to its legal essentials, then, petitioner's request for an injunction to halt an on-going Essex County, New Jersey prosecution is simply a demand that a federal court halt an already-commenced state criminal proceeding. Therefore, we recast the habeas corpus petition to be a

---

1. The contours of the habeas corpus remedy were delineated in *Preiser v. Rodriguez,* 411 U.S. 475, 485–86, 93 · S.Ct. 1827, 1834, 36 L.Ed.2d 439 (1973), as follows:

    The original view of a habeas corpus attack upon detention under a judicial order was a limited one. The relevant inquiry was confined to determining simply whether or not the committing court had been possessed of jurisdiction. . . . But, over the years, the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction. . . . Thus, whether the petitioner's challenge to his custody is that the statute under which he stands convicted is unconstitutional, as in *Ex parte Siebold* [100 U.S. 371, 25 L.Ed. 717], *supra*; that he has been imprisoned prior to trial on account of a defective indictment against him, as in *Ex parte Royall,* 117 U.S. 241 [6 S.Ct. 734, 29

    L.Ed. 868] (1886); that he is unlawfully confined in the wrong institution, as in *In re Bonner,* 151 U.S. 242 [14 S.Ct. 323, 38 L.Ed. 149] (1894), and *Humphrey v. Cady,* 405 U.S. 504 [92 S.Ct. 1048, 31 L.Ed.2d 394] (1972); that he was denied his constitutional rights at trial, as in *Johnson v. Zerbst* [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461], *supra*; that his guilty plea was invalid, as in *Von Moltke v. Gillies,* 332 U.S. 708 [68 S.Ct. 316, 92 L.Ed. 309] (1948); that he is being unlawfully detained by the Executive or the military, as in *Parisi v. Davidson,* 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); or that his parole was unlawfully revoked, causing him to be reincarcerated in prison, as in *Morrissey v. Brewer,* 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972)—*in each case his grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement.* (emphasis supplied)

complaint demanding equitable relief. Even doing so, however, we must deny the requested relief for the reasons that follow.

To prevail, petitioner would have to surmount various hurdles. First, he would have to convince us we are not foreclosed from issuing an injunction by the Anti-Injunction Act, 28 U.S.C. § 2283. There are three exceptions in that act to the flat prohibition against injunctions to halt state court proceeding: specific authorization by a Congressional Act, jurisdictional necessity and protection of federal court judgments. We perceive no facts in petitioner's case which readily lend themselves to being construed as falling in one of these exceptions. Therefore, it is likely petitioner's request is barred by 28 U.S.C. § 2283.

The one possibility that would keep petitioner from foundering on the shoals of § 2283, and the one which deters us from holding that petitioner is conclusively barred by that statute lies in construing petitioner's claim as based on 42 U.S.C. § 1983. In that event 28 U.S.C. § 2283 would not be a bar, since the Supreme Court ruled the language "in equity" in § 1983 is an express Congressional exception to the anti-injunction statute. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). But there are substantial problems in construing petitioner's complaint as one based on 42 U.S.C. § 1983. Specifically, that statute requires us to locate a federally protected right of petitioner's which has been violated as a predicate for his civil rights action. Section 1983 protects against the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws." Therefore, petitioner's claim must allege a violation of (a) a right secured by the United States Constitution; or (b) a right secured by a federal statute; or (c) a right secured by a state statute or by common law which may be deemed an "entitlement," and hence a 14th Amendment due process right under the federal Constitution. *See* Antieu, *Federal Civil Rights Acts*, §§ 43–73 (1971); 90 *Harv.L.Rev.* 86–104 (1976).

Petitioner's claim is that he was defrauded or deceived by a Pennsylvania prosecutor, a prison official and public defender by being induced to consent to a present trial in New Jersey on the assurance that New Jersey could legally extradite him in any event at a later date (*i. e.*, after his Pennsylvania term of incarceration ended and his probationary period began) even if he did not sign the papers. The claim necessarily involves the assumption that that advice was false—in other words that New Jersey could not in fact have extradited him at a later date, and that New Jersey's only hope of obtaining custody lay in obtaining petitioner's present consent to extradition pursuant to the detainer which had been lodged. Does this claim state a cause of action under any Constitutional provisions, federal laws, or state laws which are part of the "entitlement doctrine"?

The question whether petitioner was or was not deceived in fact—in other words, whether the advice he was given about future extradition was accurate or not—is governed by the Uniform Extradition Act, codified in Pennsylvania as 19 P.S. § 191.1 *et seq.*, and applicable to petitioner as a Pennsylvania prisoner at the time in question. Petitioner's claim also involves the Interstate Agreement on Detainers, since the heart of the claim is that the prisoner "consent" necessary to invoke the procedures of that statute was deceitfully obtained through false advice about the extradition procedures.[2] Both Pennsylvania, the "sending" state, and New Jersey, the "receiving" state, have enacted the Interstate Agreement. 19 P.S. § 1431 *et seq.*; 2A N.J.S.A. § 159A–1 *et seq.*

In what sense are the statutory rights identified above federally protected within the meaning of § 1983? No United States Constitutional provision is implicated (re-

---

**2.** Article III § (a) of that Agreement provides that a prisoner "shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered . . . written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint."

serving the possibility of 14th Amendment due process). Nor are both of the above statutes (extradition and detainer) "federal" laws. The Uniform Extradition Act clearly is not one since it only purports to govern transfers from one state to another, has no applicability to federal extradition jurisdiction, and has in no fashion found its way into the United States Code. The Interstate Agreement on Detainers probably is not a federal law; its status is unclear.[3]

That leaves the possibility that petitioner's right is one protected by the 14th Amendment's due process clause by virtue of the Entitlement Doctrine. *See* 90 *Harvard L.Rev.* 84–106 (1976). The entitlement questions presented are: first, whether Pennsylvania law entitles petitioner to receive accurate advice about procedures under the Uniform Extradition Act from Pennsylvania prosecutors, public defenders and prison officials; and second, whether violation of such a right to accurate advice, if it exists, constitutes, as a matter of Pennsylvania state law, a vitiation of "consent" under the Interstate Agreement on Detainers as enacted in Pennsylvania, 19 P.S. § 1431, Article III § (a).

The above entitlement questions are novel and difficult. We need not and do not decide them. For even assuming arguendo that plaintiff's allegations state a valid 14th Amendment due process claim, the petition cannot survive. Quite the contrary, petitioner then finds looming ominously, like a Mt. Everest on the landscape of federal injunctive relief, demanding to be scaled and yet virtually unscalable, the decision of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1974). For petitioner is asking us to enjoin an on-going state *criminal* proceeding, summoning notions of "our federalism," which in this context express "the fundamental policy against federal interference with state criminal prosecution," *id.* at 46, 91 S.Ct. at 751. *Younger* requires, to justify federal intervention, a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief," *id.* at 54, 91 S.Ct. at 755, and requires not merely equity's traditional "irreparable injury" to be present, but also that such irreparable injury be "both great and immediate," *id.* at 46, 91 S.Ct. 746. If a defense to the challenged prosecution would be sufficient to eliminate the threat to any federally-protected rights, then federal intervention is not proper. *Id.* at 48, 91 S.Ct. 746.

Applying these standards, we find petitioner has alleged no irreparable injury that will befall him as a consequence of standing trial in New Jersey. Nor has he alleged that the prosecution itself has been undertaken by New Jersey in bad faith, as an act of harassment against him. At most, he has alleged that two previous detainers

---

**3.** The Interstate Agreement on Detainers has been enacted into statutory law in a majority of states. The United States has made itself a party to the Agreement and has enacted into law the Agreement. See Pub.L. 91–538, 84 Stat. 1397–1403, 18 U.S.C.A. "Appendix". The nature of the Agreement is to make a "contract" between a "sending" state and a "receiving" state. The Third Circuit has held the Agreement to be a federal law sufficient to confer 28 U.S.C. § 2254 jurisdiction when the prisoner is in federal custody (*i. e.* the United States is the "sending" state) and another member state lodges a detainer. *United States of America ex rel. Esola v. Groomes,* 520 F.2d 830, 835 (3d Cir. 1975). The recent case *United States of America v. Sorrell,* 562 F.2d 227 (3d Cir. 1977) (en banc) presented the converse situation of the United States being the "receiving" state and a member state being the "sending" state. *Sorrell* affirmed the dismissal of a federal criminal indictment because of violations in the Interstate Agreement. The jurisdictional question was not explicitly considered in *Sorrell* (unlike *Esola*), but there must have been an assumption that the Interstate Agreement is a federal law to have found the violation of it to require dismissal of the indictment. Neither *Esola* or *Sorrell* addresses the question whether the Interstate Agreement is a federal law when, as here, the federal government is *neither* the sending nor receiving state. It would appear to us this would be insufficient to confer federal jurisdiction either on a habeas petition as in *Esola* or on a direct attack on the indictment as in *Sorrell* since the basic structure of the Act is one creating obligations of an explicitly contractual nature only between the sending and receiving state; it would seem that only when the federal government is either one or the other that the Agreement is a meaningful "federal" law. However, we do not decide this issue.

were procedurally defective, and that he had—and exercised—a perfectly adequate legal remedy in having those detainers dismissed. Finally, and most importantly, petitioner has not alleged that any threat to his assumed rights cannot be resolved by his defense in the New Jersey trial. Indeed, it seems to us that that is the proper, logical and adequate forum for raising the issue that he was "tricked" into signing extradition papers and that but for such trickery the New Jersey court would not have had jurisdiction to try him.[4]

Finding that petitioner's complaint, when read in light of the *Younger v. Harris* principles, cannot state a cause of action, we order the petition dismissed.

---

4. Assuming defendant raises this defense at the New Jersey trial, is convicted, and continues to raise it unsuccessfully on appeal, then the matter would be "ripe" for habeas corpus relief, in the sense that the "exhaustion" requirement would have been satisfied. At that point the federal court would have to reach the question whether petitioner's claim involves a federally-protected right for purposes of 28 U.S.C. § 2241 or § 2254.