UNITED STATES of America

v.

Ronald Alfred WILLIAMS.

Crim. A. No. 76–129.

United States District Court,
W. D. Pennsylvania.

Dec. 17, 1980.

Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., for plaintiff.

George E. Schumacher, Federal Public Defender, Robert L. Lackey, Asst. Federal Public Defender, Pittsburgh, Pa., Evidentiary hearing for defendant.

Samuel J. Reich, Pittsburgh, Pa., for defendant.

OPINION

WEBER, Chief Judge.

Petitioner, by a motion under 28 U.S.C. § 2255, seeks the vacation of sentence on two criminal convictions for robbery under 18 U.S.C. § 2113. Petitioner asserts that the failure of trial counsel to raise any objection to violations of the Interstate Agreement on Detainers Act, 18 U.S.C.App. pp. 1395 98 (1976) (hereinafter IAD), deprived petitioner of his Sixth Amendment Right to the effective assistance of counsel. The matter was remanded to this court for the limited purpose of conducting an evidentiary hearing on this point. *United States v. Williams*, 615 F.2d 585, (3d Cir. 1980). We conclude that counsel's conduct of petitioner's case meets the standard of

"customary skill and knowledge" required in this circuit by *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970), thereby fulfilling the constitutional requirement.

At the time of the robbery for which he was convicted Williams was on a pre–release program from the State Correctional Institution in Pittsburgh where he was serving a six to twelve year sentence for a 1973 state conviction for voluntary manslaughter. Upon the robbery arrest, Williams was returned to state custody.

On May 7, 1976, a federal detainer was lodged against Williams at the State Correctional Institution at Pittsburgh, Pa. An indictment against Williams for single violations of 18 U.S.C. § 2113(a) & (d), bank robbery and assault with a deadly weapon, was returned by a federal grand jury on June 9, 1976. State charges arising from the same incident had been filed against Williams, but were dropped upon the institution of the federal prosecution. Williams plead not guilty to the federal charges and on September 2, 1976, Williams was convicted by a jury on both counts. He was sentenced on March 21, 1977 and began serving his term of imprisonment on August 24, 1977. Williams took no appeal from his conviction and sentence.

On various occasions from May 18, 1976 to December 9, 1976, pursuant to writs of habeas corpus ad prosequendum, Williams was transferred from state custody at the State Correctional Institution in Pittsburgh to federal custody for appearance before the United States District Court in Pittsburgh in connection with the federal charges against him. On each occasion he was returned to state custody.

Subsequent to his conviction and sentencing, Williams filed this pro se motion to vacate, set aside, or reduce sentence under 28 U.S.C. § 2255, contending that such transfers were in violation of the IAD, that prior to trial he had raised the possibility of the violations with his attorney, and that his attorney's failure to raise these violations or to adequately research the issue exhibited ineffectiveness of counsel. The Third Circuit, on appeal from the denial of ·

this motion without a hearing by this court, vacated judgment and remanded the case for a hearing on the narrow issue of whether Williams was denied his Sixth Amendment Right to effective assistance of counsel. *United States v. Williams*, 615 F.2d 585 (3d Cir. 1980). This court held hearings on the issue on July 31, 1980.

Williams testified that he first became aware of the IAD while in the State Correctional Institution awaiting trial on the federal charges. He raised the issue with trial counsel and they discussed it at some time prior to the trial date. Petitioner recalled that when he raised the matter, counsel expressed his belief that the IAD was inapplicable to his client's case because the act did not regulate transfers from state to federal custody which did not involve transportation across state lines. Petitioner argues that, having been informed that the violations of the IAD were a possible means of dismissing the indictment, counsel should have researched the issue and made such a motion during or after trial. The failure to do so, it is urged, constitutes ineffectiveness of counsel.

The Supreme Court addressed the issue of the IAD's application to writs of habeas corpus ad prosequendum in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The Court held that such a writ was not a "detainer" but a "request for temporary custody" as those terms are used in the IAD, and therefore the IAD would apply to the writ when issued after a detainer had been lodged. The Court did not reach this decision until long after Williams' conviction. Prior to the *Mauro* decision, the state of the law was such that the IAD was not considered applicable to transfers between state and federal custody within a single state.

At the time of petitioner's trial two United States District Courts had dismissed indictments on the basis of the IAD's application to writs of habeas corpus ad prosequendum. *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976); *United States v. Mauro*, 414 F.Supp. 358 (S.D.N.Y.1976). Both decisions held the IAD applicable to the writ

(although both were in conflict with the Supreme Court's later holding in *Mauro* because they deemed the writ to be a "detainer"). However, at the time in question, these were the only decisions supporting Williams' position.

## I.

■ The settled yardstick for measuring the adequacy of legal representation in this Circuit is "the exercise of the customary skill and knowledge which normally prevails at the time and place." *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970). This standard does not require perfect representation, but competency in the conduct of a client's case. *Id.*, at 736; *United States ex rel Johnson v. Johnson*, 531 F.2d 169 (3d Cir. 1976), *cert. denied* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

■ The failure of counsel to anticipate an advance in the law, "even though not wholly unanticipated" in the legal field, does not automatically constitute ineffectiveness of counsel. *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir. 1975), *cert. denied* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976). Counsel in the instant case did fail to anticipate the shift in the law begun by the lower courts in *Sorrell* and *Mauro* which culminated in the Supreme Court's decision in *Mauro*. The issue then is whether counsel's failure to recognize the creation of a new application of the IAD deprived petitioner of his Sixth Amendment Right.

At the hearing held July 31, 1980, counsel testified to his understanding of the IAD at the time of the trial. He stated that he "did not believe that the procedure . . . of obtaining jurisdiction over a defendant by use of the federal writ of habeas corpus ad prosequendum by itself, fell under the Detainer Act." Record, at 12. This belief was correct in light of prior practice, the question is whether counsel could have anticipated a change in the law.

The District Court opinions in *Sorrell* and *Mauro* were filed less than four months prior to Williams' trial. There is a considerable time lag between the filing of an opinion and its appearance in the advance sheets of the Reporter system, often lasting several months. It is possible that at the time Williams raised the issue with counsel, these decisions were not yet published, and therefore not easily discoverable.

Even if the decisions in *Sorrell* and *Mauro* had been published prior to Williams' trial, their precedential value would have been at least questionable. The opinions were those of trial courts of other districts and the holdings were contrary to common practice in this district, and decisions by the respective appeals courts were not made until after Williams' trial. *United States v. Sorrell*, 562 F.2d 227 (3d Cir. 1977) (en banc), *cert. denied* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978); *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976).

Two courts have considered the issue of ineffectiveness of counsel in failing to raise the same previously unrecognized violation of the IAD. *United States v. Hach*, 615 F.2d 1203 (8th Cir. 1980), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980); *Gray v. Benson*, 458 F.Supp. 1209 (D.C.Kan.1978), aff'd on other grounds, 608 F.2d 825 (10th Cir. 1979). Both courts held that a defense attorney could not be faulted for failing to recognize as a potential defense a violation of the IAD which was not firmly established until the Supreme Court's decision in *Mauro*.

The 8th Circuit Court in *Hach* concluded that the IAD had not been applied to writs of habeas corpus ad prosequendum at the time of petitioner's guilty plea in 1973, and the failure to raise an unprecedented defense was not beyond "the customary skills and diligence that a reasonably competent attorney would exercise under the circumstances." *Id.* at 1206.

*Gray* involved a petitioner with a remarkably similar fact situation. Petitioner in that case was also a state prisoner transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum for arraignment in Federal Court and returned to state custody. The trial in the *Gray* case began on August 13, 1976 and Williams'

trial began on August 30, 1976. Gray's attorney failed to raise any objection to the violation of the IAD and petitioner claimed ineffectiveness of counsel for such failure.

The court held that defense counsel's failure to anticipate this defense was not outside the range of contemporary, competent legal assistance. Even though the district court's opinion in *Mauro* had been filed on May 17, 1976, the court would not find fault with counsel for not raising a potential defense which had not previously been reported.

■ Similarly, we find that under the circumstances of this case, the level of trial counsel's assistance was within the standard set by *Moore*. The two district court decisions applying the IAD to the writ in question were so recent that counsel cannot be faulted for failing to discover them. Furthermore, counsel could not have been held to have been able to come up with this defense on his own. Counsel for the Government in *Mauro* stated before the Supreme Court that "not even the defense saw the possibilities of the argument until it was raised in a 'stroke of genius'". 22 Crim.L.Rep. 1087 (1978), quoted in *Gray*, at 1214.

## II.

But all of this is purely academic under the facts in this case. Even if trial counsel had been aware of recent district court decisions in other districts concerning the applicability of the IAD, any failure to raise the IAD violation would not amount to ineffectiveness since counsel had made a reasoned choice to forego motions to dismiss the federal charges in order to avoid the possible reinstatement of state charges on the same incident. This strategic decision was commanded considering the facts and circumstances of the case, and falls well within the parameters of *Moore*.

Petitioner's trial counsel testified at the hearing that under the circumstance he would take no step to oust federal jurisdiction for his client's defense to the charges. State charges had been dropped soon after the federal bank robbery indictment was returned, but could have been reinstituted subject to the Pennsylvania 180 day, Speedy Trial Rule. Pa.R.Crim.P. 1100.

Counsel cited the inflammatory nature of the state charges as a reason for his preference for a federal forum. It appears that defendant had an extensive criminal record and was at the time of the bank robbery free on a pre-release program from a 6–12 years sentence on a voluntary manslaughter conviction. After the commission of the bank robbery charged in the federal indictment, defendant was involved in a high speed chase by local police officers in which the local police chief was fired upon and Williams' accomplice, who was the driver of a vehicle, attempted to run down the police chief. When captured Williams had two hand guns in his possession.

In no event did counsel wish to raise any defense that would oust federal jurisdiction and turn the defendant over to state authorities. The cumulative penalties of the state charges which were or could have been filed against the defendant could have resulted in a cumulative sentence more severe than a conviction on the federal charges. This choice was fully discussed with his client, and represents an "exercise of the customary skill and knowledge" as is required. In our opinion, to have taken action to oust federal jurisdiction would have clearly demonstrated inadequacy of counsel.

Petitioner contends that counsel could have filed a motion to dismiss subsequent to trial and the passing of the 180 day period for the state charges based on an alleged violation of the IAD which occurred when Williams was transferred back to state custody after his trial but before his sentencing.

The plain language of the IAD refers to "trial" but does not define the term. "If trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment . . . such indictment . . . shall not be of any further force or effect." 18 U.S.C.App.Art. IV(e). Although the court in *Walker v. King*, 448

F.Supp. 580 (S.D.N.Y.1978), held that "trial" as used in the IAD includes sentencing, no court prior to Williams' sentencing had so held. We cannot fault counsel for interpreting the term "trial" in its ordinary sense and for failure to construe it to include sentencing.

For the reasons set forth hereinabove the court concludes that the acts and decisions of trial counsel in the research and conduct of petitioner's case with respect to the violations of the Interstate Agreement on Detainers Act do not fall below the standard of "the exercise of the customary skill and knowledge", required of the profession. *Moore*, at 736. On the contrary, counsel's decision not to contest federal jurisdiction was entirely taken in the interest of the counsel's duty to represent his client in the most effective manner. Petitioner was accorded his Sixth Amendment right to the effective assistance of counsel, and the motion will therefore be denied.