**Charles DIGGS, Petitioner,**

v.

**David OWENS, Superintendent, John Daughn, Warden, Respondents.**

Civ. A. No. 83-0412.

United States District Court,
M.D. Pennsylvania.

March 21, 1986.

Charles Diggs, Graterford, Pa., for petitioner.

Katherene E. Holtzinger, Deputy Dist. Atty., Harrisburg, Pa., for respondents.

## MEMORANDUM

RAMBO, District Judge.

### A. *Background and Procedural History*

This matter is before the court on the petition for writ of habeas corpus filed by Charles Diggs (Diggs) attacking a judgment of conviction for kidnapping and first degree murder entered in the Court of Common Pleas of Dauphin County, Pennsylvania in 1978. Diggs' motions for a new trial and arrest of judgment were denied by the trial court. *Commonwealth v. Diggs,* 100 Dauph. 318 (1978). The Pennsylvania Superior Court affirmed the lower court. *Commonwealth v. Diggs,* 273 Pa.Super. 121, 416 A.2d 1119 (1979). The Supreme Court of Pennsylvania initially granted Diggs' Petition for Allowance of Appeal. However, following briefing and oral argument, the Supreme Court in a *per curiam* order dismissed the appeal as having been improvidently granted. On March 30, 1983, Diggs filed a petition for a writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254. The petition was immediately referred to the magistrate.

Diggs' petition for a writ of habeas corpus claims eight grounds for relief. The first ground alleged is that Pennsylvania violated Articles IV(c) and IV(e) of the Interstate Agreement on Detainers Act (IADA), 42 Pa.C.S. § 9101. On January 15, 1986, the magistrate issued a report which recommended that Diggs' petition for a writ of habeas corpus be granted because Article IV(e) of the IADA has been violated. The magistrate did not address the claimed violation of Article IV(c) of the IADA or any of the other seven grounds for relief raised in the petition.

On January 27, 1986, the Commonwealth filed exceptions to the magistrate's recommendation. The Commonwealth challenges the magistrate's finding of a violation of Article IV(e) of the IADA, and further avers that Diggs failed to completely exhaust state remedies. On February 5, 1986, Diggs filed an Answer to the Commonwealth's exceptions.

This court's record did not contain documents of the state court proceedings which were necessary to enable the court to assess whether Diggs had exhausted his state remedies. Therefore, on February 5, 1986, this court ordered that it be furnished with a copy of documents Diggs filed with the Supreme Court of Pennsylvania. On February 20, 1986, Diggs filed with this court his Supreme Court briefs as well as two *pro se* briefs which he had filed in the Pennsylvania Superior Court.

Upon a review of the state court record, the court adopts the magistrate's finding that Diggs has exhausted his state court remedies prior to requesting habeas corpus relief in this court. Report of Magistrate, 2–6. However, the court rejects the magistrate's recommendation that Article IV(e) of the IADA has been violated. The case therefore will be remanded to the magistrate for expeditious consideration of the remaining grounds for relief raised in Diggs' petition which were not addressed in the initial Report of Magistrate.

### B. *Discussion*

Diggs' petition claims that Pennsylvania violated Article IV(e) of the IADA, 42 Pa. C.S. § 9101, which provides in pertinent part:

If trial is not had on any indictment ... prior to the prisoner's being returned to the original place of imprisonment ... such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Diggs alleges that the state violated the IADA by allowing his return to federal custody after he was arraigned in Dauphin County, without first trying him on the murder and kidnap charges. The sequence of Diggs' transfers between federal and state custody is detailed in the trial court's opinion, *Commonwealth v. Diggs,* 100 Dauph. 318, 319–20 (1978), and in pages 10–14 and 18–20 of the magistrate's report, and will not be repeated.

This court accepts the magistrate's finding that the capiases and warrants which were forwarded by the Dauphin County district attorney to the City of Philadelphia and the United States Marshal for the Eastern District of Pennsylvania in May of 1976 were "detainers".[1] Report of Magistrate, 9–15. The court similarly agrees with the magistrate that under *United States v. Mauro,*[2] 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), where, as here, a detainer has been lodged, a subsequently issued writ of habeas corpus ad prosequendum is a written request for temporary custody which triggers the terms of Article IV(e) of the IADA. Report of Magistrate, 16–17. However, the magistrate failed to take cognizance of the Third Circuit's holding that "no retroactive effect should be given to *Mauro* in this circuit". *United States v. Williams,* 615 F.2d 585, 593 (3d Cir.1980). Therefore, even if the transfer of Diggs from state to federal custody prior to his trial for murder and kidnapping violated the terms of Article IV(e) of the IADA—a question this court need not decide—Diggs may not invoke the IADA as a ground for relief because the alleged violation took place prior to the *Mauro* decision.

The significant facts in *Williams* are indistinguishable from the facts of the instant case. Williams was on a pre-release program from a Pennsylvania State Correctional Institution when he was arrested on federal charges of bank robbery and assault with a deadly weapon. Upon his arrest, he was returned to the state prison and a federal detainer was lodged with the state prison officials. On three occasions subsequent to the filing of the detainer but prior to trial, Williams was taken from the state prison to federal court pursuant to writs of habeas corpus ad prosequendum and returned to state custody. All of the transfers took place in 1976. *Williams,* 615 F.2d at 587.

Following his conviction on the federal charges, Williams filed a motion for collateral relief under 28 U.S.C. § 2255. Williams claimed, among other things, that Article IV(e) of the IADA was violated when he was transferred from federal to state custody without being brought to trial on the federal charges. The district court dismissed the motion.

The Third Circuit affirmed dismissal of the IADA claim. The court acknowledged that under *Mauro,* the transfers of Williams pursuant to writs of habeas corpus ad prosequendum following the filing of a detainer would violate Article IV(e) of the IADA. However, the court held that *Mauro* may not be applied retroactively and therefore found there was no IADA violation because the transfers of Williams took place prior to the decision in *Mauro. Williams,* 615 F.2d at 593. Other circuits

---

1. The magistrate's report properly notes that the IADA does not define the term "detainer". As the Supreme Court observed in *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978), "[t]he House and Senate Reports, however, explain that '[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' H.R.Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970)." *See also United States v. Sorrell,* 562 F.2d 227, 230–31 (3d Cir.1977), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). Although not citing the House and Senate Reports, the magis-

trate adopted a definition of "detainer" substantially in accord with the legislative history. Report of Magistrate, 4.

2. The Court in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) reviewed two separate decisions of the Second Circuit, *United States v. Ford,* 550 F.2d 732 (2d Cir.1977) and *United States v. Mauro,* 544 F.2d 588 (2d Cir.1976). The magistrate's report refers to the Court's disposition of the *Ford* case as *United States v. Ford,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

which have considered the issue have similarly refused to give *Mauro* retroactive effect. *Greathouse v. United States*, 655 F.2d 1032 (10th Cir.1981), *cert. denied*, 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982); *United States v. Hill*, 622 F.2d 900 (5th Cir.1980); *Brown v. Mitchell*, 598 F.2d 835 (4th Cir.1979), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).

As in *Williams*, the transfers of Diggs which are alleged to have violated the IADA preceded the *Mauro* decision. Because *Mauro* may not be applied retroactively, the transfer of Diggs did not violate the IADA.

Diggs agrees that *Mauro* may not be applied retroactively. He argues, however, that if his claim is evaluated under the law prior to *Mauro*, Article IV(e) of the IADA was violated. Diggs asserts that at the time of his transfers, Third Circuit decisions held that transfers of custody pursuant to writs of habeas corpus ad prosequendum were "detainers" governed by the IADA.[3]

Diggs' argument is meritless. First, the Third Circuit in *Williams* expressly refused to grant collateral relief for a claimed IADA violation premised on the use of a writ of habeas corpus ad prosequendum prior to *Mauro*. In holding that *Mauro* was not to be applied retroactively, the court adopted the reasoning of the Fourth Circuit in *Brown v. Mitchell*, 598 F.2d 835 (4th Cir.1979), which had similarly held that no retroactive effect should be given *Mauro*. One of the reasons the Fourth Circuit refused to apply *Mauro* retroactively was that the unsettled state of the law prior to *Mauro* had led prosecutors to reasonably rely on the use of writs

of habeas corpus ad prosequendum to obtain custody of prisoners for pretrial proceedings. *Brown*, 598 F.2d at 838–39. The *Williams* court agreed that "the unsettled state of the law prior to *Mauro*, and the potential burden retroactivity would place on the administration of criminal justice especially militate against retroactive application of the *Mauro* decision." *Williams*, 615 F.2d at 593. The court therefore held that the IADA claim grounded on the use of writs of habeas corpus ad prosequendum could not be a basis for collateral relief. *Williams*, 615 F.2d at 594.

Secondly, the law of the circuit at the time of Diggs' transfers would not afford him relief under the IADA. The transfers which are alleged to constitute the IADA violation took place in January and February of 1977. The Third Circuit did not hold that writs of habeas corpus ad prosequendum were "detainers" within the IADA until August 22, 1977, in its *en banc* decision *United States v. Sorrell*, 562 F.2d 227 (3d Cir.1977), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). In response to Judge Garth's dissenting argument that the opinion would result in vacating sentences of hundreds of persons, the *Sorrell* court expressly noted that "there seems little justification for retroactive application of the statutory construction ultimately adopted, through collateral attack...." *Sorrell*, 562 F.2d at 231. The court reasoned that its opinion could not be applied retroactively because "this issue can well be considered as 'an issue of first impression whose resolution was not clearly foreshadowed.'" *Sorrell*, 562 F.2d at 231 n. 66.[4]

---

**3.** In *Mauro*, the Supreme Court held that writs of habeas corpus ad prosequendum are not "detainers" for purposes of the IADA. 436 U.S. at 361, 98 S.Ct. at 1847. The protections of the IADA are afforded only where a detainer is filed prior to the issuance of the writ of habeas corpus ad prosequendum. *Id.* at 361–63, 98 S.Ct. at 1847–48.

**4.** The Third Circuit had previously suggested that writs of habeas corpus ad prosequendum could be considered "detainers" within the meaning of the IADA in *United States ex rel.*

*Esola v. Groomes*, 520 F.2d 830 (3d Cir.1975). As Judge Garth, concurring in *Groomes*, expressly observed, given the procedural posture of the case the majority opinion's discussion of the issue was "gratuitous and advisory". *Groomes*, 520 F.2d at 842. Judge Garth's comments were confirmed by the Third Circuit's subsequent characterization of the issue in *Sorrell* as one "of first impression whose resolution was not clearly foreshadowed". *Sorrell*, 562 F.2d at 231 n. 66.

## Conclusion

For the foregoing reasons, the magistrate's recommendation that Article IV(e) of the IADA has been violated is rejected. Because the magistrate recommended granting petitioner's writ of habeas corpus for violation of Article IV(e) of the IADA, he did not address the remaining grounds of relief lodged by the petition. Report of Magistrate, 27. This court therefore will remand the case to the magistrate for consideration of the other grounds for relief asserted in the petition for a writ of habeas corpus. The court notes that the magistrate's initial report was not issued until more than two and one-half years after the petition was referred to him by this court. Because petitions for writ of habeas corpus are to be given priority, Rule 4, Rules Governing Section 2254 Cases, 28 U.S.C. § 2254, the court will direct the magistrate to expedite his disposition of the petition.