UNITED STATES of America

v.

**WILLIAMS, Ronald Alfred, Ronald A. Williams, Appellant.**

No. 79–1730.

United States Court of Appeals, Third Circuit.

Argued Dec. 10, 1979.
Decided Feb. 14, 1980.

7. Acq. 1974–2 C.B. 3 (in result), withdrawn and non-acquiescence published, 1978–37 I.R.B. 5.

Robert J. Cindrich, U. S. Atty., Frederick W. Thieman (Argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

George E. Schumacher, Federal Public Defender, Robert L. Lackey (Argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

Before ADAMS, ROSENN and SLOVI-TER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In this appeal from an unsuccessful collateral attack on his sentence brought under 28 U.S.C. § 2255 (1976),[1] Ronald Alfred Williams asks us to reverse an order of the district court, denying without an evidentiary hearing, his motion to vacate sentence. The motion to vacate was based principally on Williams' claims that (1) the Government had violated the Interstate Agreement on Detainers Act, 18 U.S.C. App. pp. 1395–98 (1976), and (2) he had been denied his sixth amendment right to effective assistance of counsel. We agree that Williams' claim of ineffective assistance of counsel should not have been denied without an evidentiary hearing and we remand for further proceedings on this claim only. Accordingly, the order of the district court will be vacated and the case remanded for an evidentiary hearing limited to that issue.

### I.

Appellant Williams was convicted by a federal jury in Pittsburgh, Pennsylvania, on September 2, 1976, on one count of bank robbery in violation of 18 U.S.C. § 2113(a), and one count of assault with a dangerous weapon, in violation of 18 U.S.C. § 2113(d). The indictment charged Williams and two accomplices with robbing the Dravosburg, Pennsylvania, office of the Equibank, N.A. bank on May 6, 1976. At the time of the robbery, Williams was on a pre-release program from the State Correctional Institution at Pittsburgh, where he was serving a sentence of six to twelve years for voluntary manslaughter arising out of a 1973 state conviction.

Upon his robbery arrest, Williams was returned to the state correctional facility. Although it does not appear in the record, Williams asserts that a federal detainer against him was lodged with the state prison officials on May 7, 1976. Subsequently, Williams' presence before the federal court was secured on several occasions through the use of writs of habeas corpus ad prosequendum. Writs were issued to the State Correctional Institution to compel Williams' presence on May 19, 1976, for an initial appearance; on May 27, 1976, for a preliminary examination; on June 18, 1976, for arraignment; and on August 30, 1976, for trial.

Williams' presence in the federal court for sentencing purposes was obtained on December 2, 1976, by a writ of habeas corpus ad prosequendum, at which time he was committed to the custody of the Attorney General for a parole study under 18 U.S.C. § 4205(d) (1976)[2] on the assault with a deadly weapon verdict. Sentencing on the bank robbery charge was suspended. Williams was thereupon transferred to a federal institution at Petersburg, Virginia for the parole study. Upon completion of the study, he was returned to the State Correctional Institution. He again appeared in federal court for final sentencing on March 21, 1977, and was sentenced to a term of imprisonment of twelve years. Williams was transferred to the federal penitentiary at Lewisburg, Pennsylvania to begin serving his sentence.

Williams did not appeal from the district court's imposition of sentence. However, on January 22, 1979, he filed a pro se mo-

---

1. 28 U.S.C. § 2255 (1976) provides in relevant part:

    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution, or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

    \*   \*   \*   \*   \*   \*

2. 18 U.S.C. § 4205(d) (Supp. 1980) provides:

    Upon commitment of a prisoner sentenced to an imprisonment under the provisions of subsections (a) or (b) of this section, the Director, under such regulations as the Attorney General may prescribe, shall cause a complete study to be made of the prisoner and shall furnish to the Commission a summary report together with any recommendations which in his opinion would be helpful in determining the suitability of the prisoner for parole.

tion to vacate sentence under 28 U.S.C. § 2255. The district court denied the motion on March 28, 1979, without requiring the Government to respond and without requiring an evidentiary hearing. Williams timely appealed and this court appointed appellate counsel to represent him.

## II.

At the outset, we note that we are not asked on this appeal to review the merits of Williams' motion for collateral relief under 28 U.S.C. § 2255. The sole issue before us is whether the district court properly denied Williams' motion to vacate sentence without holding an evidentiary hearing. The motion was based principally on two separate but related theories. Williams claimed first that the sentence should be vacated because the Government violated the Interstate Agreement on Detainers Act (IADA or the Act), thereby requiring that the federal indictment against him be dismissed.[3] Second, Williams claimed that the failure of trial counsel to raise the IADA defense constituted a deprivation of his sixth amendment right to the effective assistance of counsel, thereby requiring that his sentence be vacated. It is apparent that the nature of Williams' claimed IADA defense is central to both theories he asserted as bases for collateral relief. However, in accordance with well-settled principles, we will first examine the statutory IADA claim and then, if necessary, turn to the constitutional ineffective assistance of counsel claim. *See Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

Congress enacted the Interstate Agreement on Detainers Act in 1970, Article II(a), 18 U.S.C. App. at 1395 (1976), to authorize the United States to join with many of the States in eliminating problems associated with the transfer of prisoners cur-

rently serving a sentence in one state or territorial jurisdiction to another jurisdiction seeking to prosecute him on different or related charges. When a detainer is lodged against the prisoner while he is serving a sentence in another jurisdiction, the Act sets forth limitations on the transfers that may be made to the demanding jurisdiction. For example, under Article IV of the Act, if the prisoner's presence is obtained in a jurisdiction lodging a detainer against him, that jurisdiction must try the prisoner within 120 days of his arrival in that jurisdiction. Further, if the requesting jurisdiction obtains custody of the prisoner, it must try him *before* he is returned to the custody of the original jurisdiction. Failure to do so requires a dismissal of the charges against the prisoner. Article IV(e). The basic goal of the Act is to prevent transfers back and forth between competing jurisdictions, its theory being that such transfers undermine the right to a speedy trial and the rehabilitative process of the system in which the prisoner is currently serving a sentence.

The Supreme Court in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), considered the scope of IADA when a federal jurisdiction secured the presence of a state prisoner through the use of writs of habeas corpus ad prosequendum. The Court held that such writs are not detainers for purposes of the Agreement, *id.* at 360–61, 98 S.Ct. at 1846–47, but did hold that a writ of habeas corpus ad prosequendum was a " 'written request for temporary custody' within the meaning of Article IV of the Agreement," *id.* at 361, 98 S.Ct. at 1847.

Once the Federal Government lodges a detainer against a prisoner with state officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions. . . . It matters not whether the

---

**3.** Article IV(e) of the IADA provides such a remedy:

> If trial is not had on any indictment, . . . contemplated hereby prior to the prisoner's being returned to the original place of impris-

onment pursuant to Article V(e) hereof, such indictment, . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. 18 U.S.C. App. at 1396.

Government presents the prison authorities in the sending state with a piece of paper labeled "request for temporary custody" or with a writ of habeas corpus *ad prosequendum* demanding the prisoner's presence in federal court on a certain day; in either case the United States is able to obtain temporary custody of the prisoner. Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the Agreement requires that the disposition be speedy and that it be obtained before the prisoner is returned to the sending state.

*Id.* at 361–62, 98 S.Ct. at 1848. Thus, after *Mauro*, transfers back and forth between competing jurisdictions through the use of writs of habeas corpus ad prosequendum are brought within the restrictions in Article IV of IADA.

Before we may consider the specific nature of the claimed IADA violation in this case, two preliminary questions are raised by the Government which we must address. First, may a claimed violation of IADA serve as a basis for collateral relief under 28 U.S.C. § 2255? Second, if so, may such a claim be raised for the first time in a section 2255 proceeding since Williams did not raise the issue at trial and did not take a direct appeal from his conviction in federal court?

Section 2255 provides that a prisoner may seek collateral relief if he claims "the right to be released upon the ground that the sentence was imposed in violation of the Constitution, *or laws of the United States,* . . . . . (Emphasis supplied.) Collateral relief, therefore, may be based on a purely statutory ground. On its face, a claim that IADA was violated by the Government would appear to come within the purview of section 2255 inasmuch as the IADA is a law of the United States and its violation is an absolute defense. Indeed, we have held that an alleged violation of IADA is a claim arising under the laws of the United States for purposes of a federal habeas corpus proceeding brought by a state prisoner. *United States ex rel. Esola v. Groomes,* 520

F.2d 830, 835 (3d Cir. 1975). We see no difference in the statutory language of section 2255 which would merit a different result than that reached in *Esola* and we therefore conclude that an IADA defense is within the scope of the language in section 2255.

■ The Supreme Court, however, has cautioned that not "every asserted error of law can be raised on a § 2255 motion." *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). Rather, the asserted error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Further, the claimed error must present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Bowen v. Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939); *Davis, supra,* 417 U.S. at 346, 94 S.Ct. at 2305; *Hill, supra,* 368 U.S. at 428, 82 S.Ct. at 471.

Several cases have considered whether a claimed IADA violation is the type of "fundamental defect" sufficient to serve as a basis for section 2255 relief. The Ninth Circuit in *Hitchcock v. United States,* 580 F.2d 964, 966 (9th Cir. 1978) has held that ".a violation of the IAD guarantee asserted . .. .—that [the prisoner] not be returned to state prison following his temporary removal therefrom pursuant to the writ of habeas corpus *ad prosequendum* —falls short of a 'fundamental defect' causing a 'complete miscarriage of justice' or of 'exceptional circumstances' that might justify section 2255 relief." *Accord, United States v. Boniface,* 601 F.2d 390, 394 (9th Cir. 1979); *Huff v. United States,* 599 F.2d 860, 863 (8th Cir. 1979); *Edwards v. United States,* 564 F.2d 652, 653–54 (2d Cir. 1977).

■ We find the approach taken by our sister circuits troubling in light of the language of IADA itself and the Supreme Court's decision in *Mauro.* Inasmuch as *Mauro* established that a transfer from a state to a federal jurisdiction by writ of habeas corpus ad prosequendum is a trans-

fer within the meaning of IADA Article IV, the failure of the federal court to try the prisoner before returning him to state custody would be a violation of the Act meriting the dismissal of the charges against him. As we have alluded, the defense to the indictment is absolute under the Act when the Government violates Article IV. Under such circumstances, we fail to see how an alleged IADA violation would not be the type of "fundamental defect" cognizable in section 2255 proceedings. Although an IADA violation may have little if no bearing on the prisoner's guilt or innocence, nonetheless Congress chose to make the defense absolute when the Government violates the Act and we hold that it is precisely the "exceptional circumstances" making section 2255 relief appropriate.[4] We therefore conclude that Williams' allegation of an IADA violation is the type of statutory claim cognizable in a section 2255 action.

Even if an IADA claim may be asserted under section 2255, we must consider whether the failure of Williams' counsel to raise the defense at trial or in a direct appeal precludes him from asserting it for the first time as a basis for collateral relief. We are faced with the nettlesome question of whether a prior procedural default will bar collateral relief for a statutory violation within section 2255.

In a series of cases over the past two decades dealing with collateral relief for federal prisoners under section 2255, and the counterpart for state prisoners under section 2254, the Supreme Court has struggled to determine the extent to which constitutional and statutory claims may be raised for the first time on collateral attack. In *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court held that a constitutional claim of a coerced confession in violation of the fourteenth amendment could be brought for the first time by a state prisoner seeking federal habeas corpus

relief under 28 U.S.C. § 2254. The Court held that unless the failure to raise the issue at trial or on direct appeal was the product of a "deliberate bypass" of state procedures, there was no procedural bar to the assertion of the constitutional claim for the first time in a section 2254 proceeding. *Id.* at 438, 83 S.Ct. at 848.

In *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), the *Fay* rule was subsequently applied to a federal prisoner asserting a fourth amendment claim for the first time in a section 2255 proceeding. However, the Court in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) held that a federal prisoner could not challenge the racial composition of a grand jury for the first time on collateral attack. The result in *Davis* was mandated because Fed.R. Crim.P. 12(b)(2) required any objection to the grand jury composition to be made in a pre-trial motion. The Supreme Court held that the failure to raise the defense resulted in its waiver, 411 U.S. at 242, 93 S.Ct. at 1582. An identical result under section 2254 obtained in *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) in which the Court held that a state prisoner could not challenge the grand jury composition for the first time on collateral attack. In *Francis*, the Court, however, appeared to cut back on the deliberate bypass standard of *Fay*. The Court held that the holding in *Davis* required "not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice." 425 U.S. at 542, 96 S.Ct. at 1711 (footnote omitted).

In the past few years, the Supreme Court has further narrowed the availability of section 2254 relief for constitutional violations raised for the first time on collateral attack. In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the Court

---

4. The Second, Eighth and Ninth Circuits have apparently injected a harmless error standard into IADA cases. Such an approach is inconsistent with the Act and *Mauro*; in any event, it judges the availability of section 2255 relief by the merits of the alleged violation. Whether collateral relief is *granted* may turn on the merits of the alleged violation, but we do not believe the availability of collateral relief should be so determined.

held that where a state prisoner has a "full and fair" opportunity to litigate a fourth amendment claim in state court, such a constitutional claim may not be pursued for the first time in a section 2254 proceeding. The Court subsequently laid down a similar rule for fifth amendment claims in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Wainwright, supra,* the Court held that the "cause and prejudice" standard of *Francis* was applicable to constitutional claims raised for the first time in a section 2254 action. In *Wainwright,* the state imposed a "contemporaneous objection rule" by which a fifth amendment claim could be raised at trial. The failure to raise such an objection at trial bars assertion of the constitutional claim for the first time on collateral attack unless the prisoner can show "cause and prejudice" for his failure to object. *Id.* at 90–91, 97 S.Ct. at 2508.

Given the Supreme Court's decisions in *Stone, Francis* and *Wainwright, supra,* there is considerable confusion over the availability of relief·for both statutory and constitutional claims raised for the first time in section 2255 proceedings. The Supreme Court's recent decisions may be technically limited to section 2254 cases, but given the similarity between section 2254 and section 2255 actions and the Court's attempt to provide similar relief under each, the logic of the Supreme Court's recent pronouncements in the section 2254 may well carry over into section 2255 cases. We are convinced, however, that even assuming that the more restrictive tests of *Francis* and *Wainwright* must be applied to the facts of this case, Williams' failure to raise the IADA defense prior to the commencement of his section 2255 proceeding will not preclude the maintenance of the present action for the reason we discuss below.

■ Williams alleges that he brought the possibility of an IADA defense to the attention of his counsel who failed to raise it at trial and did not prosecute an appeal. Given the pro se character of Williams' section 2255 petition, "we must take as true

the allegations of the petitioner, unless they are clearly frivolous." *Moore v. United States,* 571 F.2d 179, 184 (3d Cir. 1978) (footnote omitted). There is no evidence on the summary record before us that Williams did not bring the IADA defense to the attention of counsel. Hence, we must assume that this allegation is true. If Williams is correct that he urged his counsel to raise the IADA defense, then the failure of counsel to raise it would be the "cause" of Williams' failure to assert the defense at trial or on direct appeal. Because a successful assertion of the IADA defense would have resulted in a dismissal of the indictment, the failure of counsel to raise it would undoubtedly have been prejudicial to Williams. Hence, assuming that the more restrictive cause and prejudice standard of *Francis* and *Sykes* is applicable, Williams has asserted a viable basis for the maintenance of the IADA defense for the first time on collateral attack. We therefore hold on this limited record that an IADA defense may be raised for the first time in a section 2255 proceeding.

### III.

■ We turn now to whether the district court erred in denying Williams' motion to vacate without an evidentiary hearing on the IADA defense. We approach the problem mindful that a motion to vacate sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court, and Williams must show that the court abused its discretion in refusing to hold a hearing on his motion to vacate. *Page v. United States,* 462 F.2d 932, 933 (3d Cir. 1972). The district court, however, denied Williams' motion·to vacate without directing the Government to answer; nor were any affidavits filed to supplement the record. We have already noted that Williams' section 2255 motion was filed pro se and that under *Moore, supra,* 571 F.2d at 184, we must accept the truth of Williams' allegations unless clearly frivolous. Further, the district court must grant an evidentiary hearing to determine the facts "unless the motion and files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Machibroda v. United States,* 368 U.S. 487, 494, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); *Moore v. United States,* 432 F.2d 730, 739 n.33 (3d Cir. 1970) (en banc).

The district court rejected Williams' assertion of an IADA violation as a basis for collateral relief because he was "not serving a term of imprisonment" when the federal writs were served to compel his presence in federal court, and thus the IADA was not triggered. Williams contends that this finding was clearly erroneous and that the record warrants an evidentiary hearing on his IADA defense.

Williams admits that in his petition for collateral relief, he did not specifically aver that at the time the transfers were made, the federal government had lodged a detainer against him for the bank robbery and assault charges and that he was currently serving a state sentence. He has appended, however, a copy of the alleged detainer to his brief to this court. The Government has not responded to the allegation that a detainer had indeed been lodged against Williams prior to the various transfers between the state prison and federal court.

Williams further argues that the record demonstrates that he was serving such a sentence and that the finding to the contrary by the district court was clearly erroneous. Williams points to the writs of habeas corpus ad prosequendum issued to compel his presence before the district court. These writs specify that Williams is "confined in the State Correctional Institution, Pittsburgh, Pennsylvania, serving a sentence on a state charge." Further, Williams testified at trial that at the time of his arrest on the federal charges, he was currently under a state sentence for voluntary manslaughter. Williams concludes that given this circuit's liberal treatment of pro se petitions for relief, a statement that he was incarcerated under state sentence at the time the federal detainer was allegedly lodged must be read into his motion. Considering the pro se nature of Williams' petition and his contentions in this court that a federal detainer had been lodged against him while he was confined under a state sentence and that he was transferred back and forth between state and federal authorities, we are persuaded that further inquiry into his allegation of an IADA violation by the Government may be warranted unless *Mauro, supra,* decided after Williams' trial, has no retroactive effect.

■ The Government, although it does not defend the district court's finding that Williams was not incarcerated under a state sentence or controvert Williams' allegation that a federal detainer was lodged, argues that Williams cannot sustain his IADA claim, because the transfers pursuant to writs of habeas corpus ad prosequendum occurred prior to the Supreme Court's decision in *Mauro,* which held that such transfers were within Article IV of IADA. The Government urges that no retroactive effect be given to the *Mauro* decision. If *Mauro* is not retroactive, then the argument is that there is no IADA violation and hence the district court's dismissal of Williams' motion to vacate sentence must be affirmed on that ground.

The Supreme Court in *Mauro* did not indicate whether its decision should be applied retroactively. The only circuit to consider the question has concluded that no retroactive effect should be given to *Mauro.* In *Brown v. Mitchell,* 598 F.2d 835, 837 (4th Cir. 1979), the court held that *Mauro* announced a new rule of law not clearly foreshadowed and that under the Supreme Court's decision in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), no automatic retroactivity should be accorded to the *Mauro* decision. The Fourth Circuit then analyzed the four factors determining retroactivity of a new principle of law announced in *Stovall v. Denno,* 388 U.S. 293, 296–300, 87 S.Ct. 1967, 1969–71, 18 L.Ed.2d 1199 (1967) and *Linkletter v. Walker,* 381 U.S. 618, 636–38, 85 S.Ct. 1731, 1741–42, 14 L.Ed.2d 601 (1965):

(1) the extent of reasonable reliance upon the premise that the now-condemned conduct was legitimate;

(2) the purpose of the new rule and the extent to which that purpose will be aided by retroactivity;

(3) the effect on the administration of justice of applying the new rule retroactively; and

(4) the extent to which the new rule bears on the defendant's guilt or innocence.

598 F.2d at 838. The court concluded that none of these factors militated in favor of retroactive application of *Mauro* because (1) the unsettled state of the law prior to *Mauro* led to reasonable reliance by prosecutors on the use of writs of habeas corpus ad prosequendum; (2) there was no undermining of the prisoner's rehabilitation or denial of speedy trial which are the evils sought to be eliminated by *Mauro*; (3) retroactive application of *Mauro* would have a substantial disruptive effect on the administration of justice, and (4) the IADA violation did not impugn the integrity of the defendant's conviction as there was no evidence of prejudice to the defendant's defense. *Id.* at 838–39.

We find the reasoning of the Fourth Circuit persuasive and we believe that no retroactive effect should be given to *Mauro* in this circuit. We believe that the unsettled state of the law prior to *Mauro*, and the potential burden retroactivity would place on the administration of criminal justice especially militate against retroactive application of the *Mauro* decision. Further, whatever interference with the prisoner's right to speedy trial and the rehabilitation program of the sending jurisdiction by the Government's violation of IADA cannot be rectified by applying *Mauro* retroactively. *Cf. Linkletter, supra*, 381 U.S. at 637, 85 S.Ct. at 1742 (police misconduct in conducting illegal searches and seizures cannot be corrected by releasing prisoners involved). Finally, because violations of IADA bear little on the defendant's actual guilt or innocence of the offense charged, retroactive application of *Mauro* will not correct or affect any of the truth-finding process at trial. For these reasons, we hold that *Mauro* is not to apply retroactively and that Williams therefore, may not sustain his sec-

tion 2255 motion based solely on his asserted IADA defense. Accordingly, Williams is not entitled to a further evidentiary hearing based solely on the merits of his IADA defense as a basis for collateral relief under section 2255.

IV.

Williams also maintains that the district court erred in rejecting his ineffective assistance of counsel claim without an evidentiary hearing. The court stated:

Williams avers that he was denied effective assistance of counsel because his attorney failed to adequately research, raise certain defenses, and object to violations of the Act. In the estimation of the Court, counsel must be afforded a measure of latitude and discretion in the preparation and presentation of a case. Moreover, we are generally familiar with the ability and reputation of Williams' attorney. In the absence of specific allegations as to the inadequacy of counsel, we find the charge insufficient and we shall not require the United States to answer.

Williams, however, claims that he did sufficiently allege a specific instance of ineffective assistance, namely, the failure of his defense attorney "to raise timely or any objection to the Governments [sic] repeated violations of the Interstates [sic] Agreement on detainers." The core of Williams' ineffective assistance of counsel claim is that he brought the possibility of an IADA violation to the attention of his defense counsel who failed to explore the defense or assert it at trial. Williams claims that had the IADA defense been successfully asserted, the result would have been dismissal of the indictment.

■ The standard for determining whether representation by counsel is effective for purposes of the sixth amendment has been long settled in this circuit. In *Moore v. United States, supra*, 432 F.2d at 736 (footnote omitted) we held: "[T]he standard of adequacy of legal services as in other professions is the exercise of the cus-

tomary skill and knowledge which normally prevails at the time and place." The burden of proof is on the defendant to prove that the representation by counsel was constitutionally inadequate. *United States ex rel. Johnson v. Johnson,* 531 F.2d 169, 174 (3d Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

Our inquiry must be whether trial counsel's failure to raise the potential IADA defense could have constituted representation falling below the normal level of customary skill and knowledge of defense counsel at the time of Williams' trial, so as to warrant an evidentiary hearing on this issue. We have stated that "[t]he exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case . . . ." *Moore, supra,* 432 F.2d at 739 (footnote omitted). The Sixth Circuit has admonished that defense counsel "must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974). *See Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir. 1978).

Because an assertion of an IADA defense, if successful, would have achieved a dismissal of the indictment, failure to assert this defense by counsel, especially if brought to his attention by the defendant, may have been a fatal error prejudicing Williams' case. The failure to assert a defense which could result in the dismissal of an indictment may not be the type of decision by trial counsel entitled to the "measure of latitude and discretion" found by the district court.

Our view of Williams' sixth amendment argument must not be colored by our holding today that the non-retroactivity of *Mauro* bars Williams' motion for collateral

relief based solely on an alleged violation of IADA. Although Williams cannot now pursue his IADA defense as a ground for collateral relief, this does not necessarily mean that defense counsel could not have raised the IADA defense successfully at trial. Conceivably, the trial court could have held as the Supreme Court eventually held in *Mauro* that the transfers pursuant to writs of habeas corpus ad prosequendum following the lodging of a detainer against Williams violated IADA, thereby warranting dismissal of the indictment.[5] Certainly such a result was not foreclosed by any prior case law.

■ We are persuaded that, although Williams was represented by an experienced and able criminal trial lawyer, Williams' claim of ineffective assistance of counsel was not "clearly frivolous." We therefore are constrained to conclude that the district court abused its discretion in failing to grant an evidentiary hearing on this issue.

We emphasize that we express no opinion at this time as to the merits of Williams' ineffective assistance of counsel contention as a basis for collateral relief. Whether Williams was deprived of his sixth amendment rights will in large part depend on whether under our standard in *Moore, supra,* (en banc), defense counsel would have normally been expected to raise such a defense. The issue can be resolved only after the district court conducts a full evidentiary hearing to uncover the circumstances surrounding the alleged failure of trial counsel to raise the IADA defense.

## V.

The order of the district court denying Williams' motion to vacate sentence will be vacated and the case remanded for an evidentiary hearing limited to the issue of the

---

**5.** We note that even if no detainer had been lodged, because Williams was tried prior to *Mauro,* the trial court may still have determined that an IADA violation had occurred because a writ of habeas corpus ad prosequendum could serve as the detainer. Although this view was rejected in *Mauro,* between Williams' trial and that decision, we held en banc in

*United States v. Sorrell,* 562 F.2d 227, 231 (3d Cir. 1977), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978) that such writs could act as detainers. Thus it is conceivable that the trial court could have found an IADA violation and ordered the indictment against Williams dismissed.

alleged denial of Williams' sixth amendment right to effective assistance of counsel.