Lawrence Frederick CARLSON, Petitioner,

v.

Tany S. HONG, Attorney General, State of Hawaii, Respondent.

Civ. No. 82–0211.

United States District Court, D. Hawaii.

Aug. 10, 1982.

Philip D. Bogetto, Honolulu, Hawaii, for petitioner.

Arthur Ross, Deputy Atty. Gen., Tany S. Hong, Atty. Gen., Honolulu, Hawaii, for respondent.

## ORDER RE PETITION FOR WRIT OF HABEAS CORPUS

SAMUEL P. KING, Chief Judge.

### FACTS

On March 22, 1978, the petitioner, along with a co-defendant, was indicted in Hawaii on two counts of false pretenses in violation of Hawaii law. At the time, the petitioner was serving a federal sentence at the Lompoc Federal Correctional Institution in California. On March 30, 1978, the Hawaii prosecuting attorney sent a letter to the Lompoc prison officials notifying them that an indictment had been returned against the petitioner, and asking them to "advise us if subject Defendant [Carlson] is incarcerated at your facility. If so, this office is prepared to file a Writ of Habeas Corpus Ad Prosequendum to bring Defendant Carlson back to this jurisdiction for arraignment and plea, and subsequently for trial."

The Lompoc officials wrote back to the prosecutor on May 30, 1978 confirming that the petitioner was indeed in their custody and expressing the intent to cooperate in transferring him to Hawaii. Pursuant to a writ of habeas corpus *ad prosequendum*, Carlson was brought to Hawaii on June 7, 1978 for arraignment and plea, then transferred back to Lompoc on June 8.

On July 5, 1978, the petitioner filed a motion to dismiss the Hawaii indictment on the grounds that his rights under Article IV(e) of the Interstate Agreement on Detainers ("IAD") had been violated because he was returned to Lompoc before being tried on the state charges. The Hawaii Circuit Court, on August 21, 1978, granted the motion and dismissed the indictment.

The State of Hawaii appealed, and on September 16, 1980, the Hawaii Supreme Court reversed the trial court's dismissal of the indictment.

Carlson was convicted on both counts of the reinstated indictment at a jury-waived trial on March 31, 1981 and sentenced to five years in prison.

The case comes before this Court on Carlson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which alleges that he is in state custody in violation of Article IV(e) of the IAD. The parties agree that the petitioner has exhausted his state remedies on this issue.

### DISCUSSION

The Interstate Agreement on Detainers is a compact among nearly all states providing procedures whereby, among other things, one state can obtain, for the purpose of disposing of criminal charges, the presence of a person who is in the custody of another state. Art. IV. Hawaii's participation is enacted at H.R.S. §§ 834–1 through 834–6. By act of Congress, the United States and the District of Columbia are parties to the IAD as well. Interstate Agreement on Detainers Act, 18 U.S.C.App. [Since the Hawaii version and the federal version are in all relevant respects identical, reference to either will be to the IAD alone.]

Once a detainer has been filed against a prisoner in one state by a prosecutor in another state, the prosecutor can secure the prisoner's presence by presenting to the officials of the "sending state" a "written request for temporary custody or availability." Art. IV(a). Having obtained the prisoner, the prosecutor in the "receiving state" is subject to two limitations. Under Article IV(c), the prisoner's trial must begin within 120 days of his arrival in the receiving state, unless a continuance for good cause is granted.

In addition, Article IV(e) provides that: If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment ... such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

The petitioner bases his request for a writ of habeas corpus on the ground that the prosecutor's letter of March 30, 1978 to the Lompoc prison was a detainer within the meaning of the IAD, and that his subsequent transfer to and from Hawaii before trial on the Hawaii charges constituted a violation of Article IV(e) requiring dismissal of the indictment. Because he was tried and convicted despite this alleged violation of the IAD, Carlson claims he is being held contrary to the laws of the United States.

The State, on the other hand, argues that the March 30, 1978 letter was not a detainer, but merely a request for information concerning the whereabouts of the petitioner, and that, even were the letter a detainer, prisoners are not entitled to relief under § 2254 for violations of the IAD.

The Court therefore first addresses the question whether violations of the IAD are cognizable under 28 U.S.C. § 2254, assuming *arguendo* that the letter in question was a detainer.

■ It is well-settled that, for purposes of establishing the Court's subject-matter jurisdiction under § 2254, the IAD is a "law of the United States." *E.g., Bush v. Muncy,* 659 F.2d 402, 407 (4th Cir. 1981). Nevertheless, it is also clear that not all violations of federal law will entitle a prisoner to habeas corpus relief. Rather, the question is "whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' " *Davis v.*

*United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

Whether violations of the IAD can be asserted in § 2254 proceedings is therefore determined by the *Davis* test. In the Ninth Circuit, the answer to this question is somewhat confused. Initially, in *Hitchcock v. United States,* 580 F.2d 964, 966 (9th Cir. 1978), the court of appeals held that the

violation of the IAD guarantee asserted by Hitchcock here—that he not be returned to state prison following his temporary removal therefrom pursuant to the writ of habeas corpus *ad prosequendum*—falls far short of a "fundamental defect" causing a "complete miscarriage of justice" or of "exceptional circumstances" that might justify section 2255[1] relief. At least on the facts of this case, we agree with the Second Circuit that "a claim based on a violation of IAD is not within 28 U.S.C. § 2255." *Edwards v. United States,* 564 F.2d 652, 653 (2d Cir. 1977) [footnote omitted].

A second panel of the Ninth Circuit reaffirmed this holding in *United States v. Boniface,* 601 F.2d 390, 394 (9th Cir. 1979), also with respect to asserted violations of Article IV(e). The court explained in a footnote that:

In *Hitchcock* we also noted in *dicta* that no detainer had been placed against the defendant and therefore the protections of the IAD were not implicated. While Boniface claims that a detainer was placed against him which implicated the IAD, *Hitchcock* means that Boniface's claim cannot be raised in this § 2255 proceeding *even if it might have been viable if raised at trial or upon direct appeal.*

*Id.* 394 n.3 (emphasis added).

Then, in *Cody v. Morris,* 623 F.2d 101 (9th Cir. 1980), a third Ninth Circuit panel appeared to have taken a different tack. Distinguishing *Hitchcock* on its facts, and mak-

1. It should be noted that, for present purposes, § 2254 and § 2255 are subject to the same standards. Thus, principles that apply to one are equally applicable to the other. *See Bush,* 659 F.2d at 407 n.3.

ing no reference to *Boniface*, the panel concluded that "a failure of a state court to follow the mandate of the IADA to bring a defendant to trial within 120 days constitutes a violation of federal law for purposes of § 2254." *Id.* 103 (citation omitted). The court distinguished *Hitchcock* on the ground that there the petitioner had been transferred pursuant to a writ of habeas corpus *ad prosequendum*, which is not a detainer triggering the limitations of the IAD, whereas Cody had been moved after the filing of a true detainer. This analysis, however, contradicts the *Boniface* court's conclusion in its footnote 3, quoted above, that *Hitchcock* means that a claimed violation of the IAD is not cognizable under habeas corpus "even if it might have been viable if raised at trial or upon direct appeal."

Finally, an even more recent Ninth Circuit opinion further compounds the confusion. In *United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981), the court, with apparent approval, cited *Boniface* and *Hitchcock* in support of the proposition that "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." Although dicta, the opinion nevertheless reinforces the vitality of the *Hitchcock* holding.

Thus, there is a split even among panels of the Ninth Circuit as to whether the rule of *Hitchcock* or *Cody* correctly expresses the law of the circuit. This split parallels a split among the circuits. Two circuits permit collateral challenges to criminal convictions under the IAD, *see, e.g., United States v. Williams*, 615 F.2d 585 (3d Cir. 1980); *Echevarria v. Bell*, 579 F.2d 1022 (7th Cir. 1978) (dictum), while five circuits do not find violations of the IAD cognizable under § 2254 and § 2255; *see, e.g., Bush v. Muncy*, 659 F.2d 402 (4th Cir. 1981); *Mars v. United States*, 615 F.2d 704 (6th Cir. 1980); *Fasano v. Hall*, 615 F.2d 555 (1st Cir. 1980); *Huff v. United States*, 599 F.2d 860 (8th Cir. 1979); *Edwards v. United States*, 564 F.2d 652 (2d Cir. 1977).

The Court now then must attempt to follow a trail obscured by several sets of footprints.

Upon consideration of the conflicting precedents in this and other circuits, the Court has concluded that *Cody v. Morris* is distinguishable from the instant case and that the correct rule to apply is that of *Hitchcock v. United States*. In the first place, *Cody* dealt with a different provision of the IAD than that which is implicated here. The petitioner in this case claims a violation of Article IV(e), the trial-before-return provision, whereas Cody asserted a violation of Article IV(c), which sets a 120-day time limit on prosecutions. Because the 120-day limitation may be related to the speedy trial rights of the defendant, different considerations may be involved in asserted violations of this provision than in violations of Article IV(e), which is aimed at preventing the disruption of the prisoner's course of rehabilitation. *See* IAD, Art. I. Both *Hitchcock* and *Boniface* involved asserted violations of Article IV(e) and therefore provide more persuasive authority for present purposes. *Cf. Bush v. Muncy*, 659 F.2d at 408 & n.4 (noting that the 120-day limitation involves "different interests of the criminal accused than do the trial-before-return provisions," and limiting its holding accordingly).

In addition, the holding in *Cody*, when read precisely, appears limited to the *jurisdictional* question whether violations of the IAD are violations of "laws of the United States" within the purview of § 2254. Specifically, the court stated: "The first question we must address is whether, even if we assume that Cody was not tried within the time prescribed under the IADA, Cody alleges *a violation of federal law* that is cognizable under § 2254." 623 F.2d at 102 (emphasis added). And the court's holding was simply "that a failure of a state court to follow the mandate of the IADA to bring a defendant to trial within 120 days constitutes *a violation of federal law* for purposes of § 2254." *Id.* 103 (emphasis added). Even the court's citation to *United States v. Williams*, 615 F.2d 585 (3d Cir. 1980), may have been directed only to that portion of

*Williams* that dealt with the jurisdictional issue, *id.* 589, but this is purely conjecture. At any rate, that the holding of *Cody* is so limited also follows from the fact that the opinion never discussed the criteria established by *United States v. Davis* for finding a claimed error of law cognizable under §§ 2254 and 2255, *see* p. 5, *supra*, while *Hitchcock* did.

The Court, therefore, is satisfied that *Cody* is inapposite and will apply *Hitchcock* to the petition now before it. Inasmuch as *Hitchcock* held that prisoners are not entitled to habeas corpus relief for violations of Article IV(e) of the IAD, the Court now must DENY Carlson's Petition for Writ of Habeas Corpus.

Having disposed of the petition for the foregoing reasons, the Court need not consider whether the March 30, 1978, letter from the Hawaii prosecutor to Lompoc prison was a detainer within the meaning of the IAD.

IT IS SO ORDERED.