**UNITED STATES of America**

v.

**Frank Owen PERSINGER.**

**Crim. No. 81–184.**

United States District Court,
W.D. Pennsylvania.

Oct. 25, 1982.

W. Thomas McGough, Jr., Asst. U.S. Atty:, Pittsburgh, Pa., for plaintiff.

Mark J. Homyak, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Presently before the court is the defendant's motion to dismiss the above-captioned criminal action. The motion will be denied.

## BACKGROUND

The defendant contends that the continuous custody article of the Interstate Agreement on Detainers, 18 U.S.C. App. at 360 (1982 Supp.) (IAD) requires that this action be dismissed because after he had been obtained from state custody for arraignment in the instant criminal proceeding he was returned to state custody before the case was tried.

The stipulated facts relevant to this motion may be stated as follows:

The defendant, Frank Owen Persinger, was arrested on October 9, 1981, by Allegheny County, Pennsylvania, authorities on various state criminal charges and lodged in the Allegheny County Jail (Jail) in Pittsburgh, Pennsylvania, pending disposition of those charges.

On the same date, a federal detainer was lodged against Persinger on the basis of a warrant issued by the United States District Court for the Western District of Pennsylvania pursuant to a complaint charging the defendant with interstate transportation of stolen travelers checks.

The defendant was taken into federal custody on October 27, 1981, on the federal complaint under a writ of habeas corpus ad prosequendum (writ) for an initial appearance before a United States Magistrate pursuant to Rule 5, Fed.R.Crim.P. At the conclusion of this proceeding the defendant was transported to the Jail and returned to state custody.[1]

On November 4, 1981, a federal grand jury sitting in the Western District of Pennsylvania indicted defendant Persinger and another individual on multiple federal charges, including those contained in the aforesaid complaint. Subsequently, on November 19, 1981, pursuant to another writ, Persinger was taken into custody at the Jail by a deputy United States Marshal for arraignment before a United States Magistrate on the indictment returned by the federal grand jury on November 4. The magistrate was well-aware of the IAD, and in a colloquy with the attorney for the government during the arraignment, the magistrate expressed his concern that the continuous-custody requirements of that statute be complied with when the defendant was returned to the Jail following the arraignment. Indeed, at the conclusion of the arraignment, the magistrate specifically instructed the deputy marshal escorting Persinger to "make sure he [the defendant Persinger] stays in federal custody unless the U.S. Attorney's office advises you otherwise."[2] (matter in brackets added).

However, when the deputy marshal returned Persinger to the Jail, the deputy did not inform the warden that the defendant was to be maintained as a federal prisoner and did not log him as a federal prisoner in the marshal's records. As a result, neither the marshal's records nor those of the Jail

---

1. Pursuant to a contract between the United States government and Allegheny County, Pennsylvania, authorities, federal prisoners awaiting proceedings in the United States District Court in Pittsburgh are lodged at the Allegheny County Jail which is approximately six city blocks from the United States Courthouse. Both the United States Marshal and the administrators of the Jail record the names of the persons designated as federal prisoners, and, periodically, the United States Marshal reimburses Allegheny County for the cost of housing those prisoners.

2. Transcript of Arraignment on November 19, 1981, at p. 7.

reflected that Persinger was in federal custody when he was returned to the Jail on November 19, 1981.

On December 15 and 29, 1981, and February 18, 1982, defendant Persinger was brought to federal court for pretrial hearings by deputy marshals pursuant to writs issued for each of those days. In each instance a deputy marshal returned the defendant to the Jail without designating him a federal prisoner.

Persinger's trial on the federal charges took place on February 22–25, 1982. On each trial day a deputy marshal obtained custody of the defendant by means of a writ and on each day returned him to the Jail without designating him a federal prisoner. The defendant was convicted of several of the federal charges on February 25, 1982, but again was returned to the Jail where he was serving state prison sentences.

On April 12, 1982, the defendant having completed serving the sentences imposed by Pennsylvania state courts, the authorities at the Jail changed their records to indicate that Persinger then was being held as a federal prisoner.[3] Persinger was in that status when he was sentenced on June 3, 1982. On that date, the Honorable Rabe F. Marsh, who had presided over Persinger's trial, sentenced him to certain terms of imprisonment and specified that the imprisonment was to be deemed to have begun on the date he was "received into federal custody."

Following the sentencing proceeding on June 3, 1982, the office of the United States Attorney learned for the first time that, contrary to the oral custody order of the United States Magistrate on November 19, 1981, the deputy marshal had not designated Persinger a federal prisoner upon returning him to the Jail after his arraignment. The United States Attorneys' office promptly alerted Persinger's attorney to the possibility that a violation of the IAD had occurred. Subsequently, the defendant filed the pending motion to dismiss, and an evidentiary hearing was held before Judge Marsh.[4]

## DISCUSSION

The question before us is whether the aforesaid failure of the deputy marshal to advise the authorities at the Jail upon the return of the defendant to that institution that the defendant was to be retained as a federal prisoner resulted in the return of the defendant to state custody within the meaning of the IAD where the United States Magistrate at the arraignment of the defendant had ordered that he be retained in federal custody and had so directed the deputy marshal temporarily in charge of the defendant. If the magistrate's oral order is controlling, then no violation of the IAD occurred and the defendant's indictment and conviction will stand. If, on the other hand, the defendant's custody-status properly is controlled by the aforesaid acts and omissions of the deputy marshal, then the motion to dismiss must be granted and the defendant released.

### A.

■ Congress enacted the IAD in 1970 in order to authorize the United States to join with many of the states in eliminating some of the problems associated with the transfer of a prisoner from a state or territory of incarceration to a jurisdiction seeking to prosecute him. *U.S. v. Williams,* 615 F.2d 585, 588 (3d Cir.1980).

---

**3.** The parties' stipulation states that on April 12, 1982, "formal custody over defendant Persinger was transferred to the federal government." The hearing record, however, indicates that Blaise Tunstall, Supervising Clerk at the Allegheny County Jail, the witness who testified on this subject, stated that what occurred on April 12, 1982, was that the records at the Jail were changed by Tunstall at the request of the United States Marshals to reflect that Per-

singer was then a federal prisoner. Transcript of hearing of June 27, 1982, pp. 117–118. We believe that this is a more accurate and descriptive account of what transpired than that stipulated to by the parties.

**4.** This matter was reassigned to this member of the court during Judge Marsh's temporary absence from the court.

Under Article IV(e) of the IAD, severe sanctions are imposed on a state which takes custody of a prisoner held by another state and which fails thereafter to dispose of its charges against him before returning him to the original place of imprisonment.

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment ... such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. at 362 (1982 Supp.); see *U.S. ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir.1975).

### B.

The defendant argues that under Article IV(e) of the IAD, once the deputy marshal obtained temporary custody over the defendant and removed him from the Jail under the writ for a proceeding relative to the pending federal charges, the government was obliged to retain *custody* over him until he was tried on those charges, otherwise those charges must be dismissed with prejudice. In support of this position, he cites *U.S. v. Williams, supra,* and *U.S. v. Sorrell,* 413 F.Supp. 138 (E.D.Pa.1976); aff'd, 562 F.2d 227 (3d Cir.1977).

In *Williams,* the Third Circuit in holding that an alleged violation of the IAD is the type of fundamental defect cognizable in a proceeding under 28 U.S.C. § 2255, stated:

> Inasmuch as *Mauro [United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)] established that a transfer from a state to a federal jurisdiction by writ of habeas corpus ad prosequendum is a transfer within the meaning of [IAD] Article IV, the failure of the federal court to try the prisoner before returning him to state custody would be a violation of the Act meriting dismissal of the charges against him. As we have alluded, the defense to the indictment is *absolute* under the Act when the Govern-

ment violates Article IV. (Matter in brackets and emphasis added).

615 F.2d at 589–90.

In *Sorrell,* the defendant was a state prisoner in the State Correctional Institution at Graterford, Pennsylvania. Pursuant to a writ of habeas corpus ad prosequendum, the defendant was brought to federal court in Philadelphia for arraignment on a federal indictment. The defendant was then returned to Graterford without having been tried on the federal charges. The district court held that the IAD was violated and dismissed the indictment. The Third Circuit, en banc, affirmed.

The defendant contends that this case must be dismissed for violation of Article IV(e) because the federal government in fact relinquished the temporary custody which it had obtained over him on November 19, 1981, when, after the arraignment on that day, the deputy marshal who then returned him to the Jail failed to inform the prison authorities that he was to be maintained as a federal prisoner.

### C.

■ The government makes essentially two arguments in response to the defendant's motion. First, the government contends that since both state and federal prisoners are housed at the Jail and the defendant, regardless of whether he was in state or federal custody, would have remained at all times relevant to this case at the Jail where he was serving a state sentence, the IAD was not violated because the defendant was not transferred from his original place of imprisonment. The government argues that the essential purpose of the IAD is satisfied if the prisoner's right to a speedy trial and uninterrupted rehabilitation are not frustrated. In short, the government contends that a defendant is not entitled to relief for a violation of the IAD unless he has been prejudiced by the violation. In *Williams* the purpose of the IAD was set forth:

> The basic goal of the Act [the IAD] is to prevent transfers back and forth between competing jurisdictions, its theory being

that such transfers undermine the right to a speedy trial and the rehabilitative process of the system in which the prisoner is currently serving a sentence.

(Matter in brackets added)

615 F.2d at 588. Since Persinger was never taken from a state rehabilitative program prior to his federal trial, but merely was removed from the original prison in the sending state and returned daily, it indeed can be argued, as the government does, that the IAD was not violated, because the continuation of the uninterrupted program at the original place of imprisonment was not interfered with. See *U.S. v. Chico,* 558 F.2d 1047 (2d Cir.1977).

The problem with this argument, however, as we have seen, is that it is foreclosed in this Circuit. In both *Williams* and *Sorrell* the Third Circuit held that violations of the IAD warranted dismissal of indictments even though in each case the defendant was continuously housed at a state prison facility in the sending state. And certainly in *Williams* the court implicitly rejected the *Chico* reasoning relied on by the government when it stated at p. 590 that the defense to this indictment was "absolute under the IAD when the Government violates Article IV." *But see U.S. v. Simmons,* 437 F.Supp. 621 (W.D.Pa.1977) *aff'd without op.* 586 F.2d 836 (3d Cir.1978).

The government's alternative position is that even if custody is the determinative factor, the case should not be dismissed, since the magistrate ordered that the defendant be kept in federal custody and directed the deputy marshal accordingly, and the subsequent failure of the deputy to execute the order simply resulted in a "bookkeeping" error, which did not affect the defendant's custody status. In other words, the magistrate's order was sufficient *in and of itself* to retain federal custody over Persinger, and the subsequent acts or omissions of the deputy marshal and any internal administrative regulations or practices relative to custody status at the Jail for its record and bookkeeping purposes are irrelevant.

■ It is one of the duties of the United States Marshals as set forth in 28 U.S.C. § 569(b) (1968) to:

.  .  .  .  .

(b) . . . execute all lawful writs, process and orders issued under authority of the United States, including those of the courts and Government of the Canal Zone, and command all necessary assistance to execute their duties.

Under this statute, which defines the duties and authority of the United States Marshal, the marshal's basic function is to execute orders issued under the authority of the United States. *Ford v. Carballo,* 577 F.2d 404, 407 (7th Cir.1978). Of course, a marshal, just as any other law enforcement officer, has the authority to make arrests under some circumstances without a warrant and to thereby independently of a direct judicial order affect a custody status. But where, as in this case, he takes custody of a person by authority of a judicial directive, be it a writ or another form of written or oral judicial order, the marshal is acting in a purely ministerial role. This purely ministerial function long has been recognized. *Levy Ct. v. Ringgold,* 30 U.S. 451, 5 Pet. 451, 8 L.Ed. 188 (1831); 3 *Opinions of Attorney General* 497 (1840).

■ United States Magistrates, on the other hand, are judicial officers invested in many instances with authority essentially identical to that of an Article III judge. *See* 28 U.S.C. § 631 et seq. (1982 Supp.). *See also U.S. v. Richardson,* 57 F.R.D. 196, 197 (E.D.N.Y.1972). A United States Magistrate is a committing judicial officer, 18 U.S.C. § 3041 (1969), and in this capacity he has the power to issue warrants, conduct preliminary examinations, and hold a defendant to answer for an offense upon a finding of probable cause at said hearing. *See* Fed.R.Crim.P. 5, 5.1 (1975). In the case at bar the magistrate was clearly acting within his judicial authority when he issued the order that Persinger remain in federal custody, and, of course, the deputy marshal had no power or authority to modify or to vacate that order directly by act or indirectly by omission. His function was the purely

ministerial one of executing the lawful order.

In *U.S. v. Peterson,* 592 F.2d 1035 (9th Cir.1979), the court held that the defendant was in custody by virtue of process issued under the laws of the United States by a court or a judge, and the fact that the defendant, after being ordered to federal custody, left the courthouse prior to being transferred by his attorney to the marshal did not form the basis for a defense of lack of custody to a charge of escape under 18 U.S.C. § 751(a) (1982 Supp.). At page 1037 the court cited as indistinguishable *Tennant v. United States,* 407 F.2d 52 (9th Cir.1969). In that case the defendant was convicted of escape from custody in violation of 18 U.S.C. § 751(a). He appealed, contending that he had never been in custody. The evidence was that a customs inspector told the defendant that he was under arrest, but before he was placed under physical restraint the defendant fled in his automobile. The court affirmed, holding that the defendant was in custody the moment the customs inspector orally stated that the defendant was under arrest.

We conclude that where a magistrate issues an oral order that a prisoner be maintained in federal custody and also directs a marshal to maintain him in that status, the order is self-executing as to the prisoner's *custody status* and its efficacy is unimpaired by any subsequent act or omission of the marshal.

We have considered the fact that there were multiple writs issued and that except when the defendant was arraigned and returned to the Jail by the magistrate on November 19, 1981, there was no order that he be retained in federal custody. Since the defendant was in federal custody as of November 19, 1981, by virtue of the magistrate's order of that date, we believe that he would remain in that status until that order was vacated or modified by the magistrate or by some higher judicial authority and that, therefore, no further order by the magistrate or the trial judge was necessary simply to maintain defendant in that status. And, of course, the November 19, 1981, order was not vacated or modified prior to the trial and sentence of the defendant.

For the foregoing reasons, we conclude that Persinger remained in federal custody from the time of his arraignment on November 19, 1981, until the disposition of the federal charges against him in the instant case, and hold, therefore, that there was no violation of the IAD.

An appropriate order will be entered.